# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 18-1616V**
Filed: May 15, 2020

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * | * | |
| RICHARD BRIESEACHER, | * | To Be Published |
| | * | |
| Petitioner, | * | |
| v. | * | Decision on Attorneys' Fees and Costs; |
| | * | Reasonable Basis; Denial |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * * | * | |

*Matthew Vianello, Esq.*, Jacobson Press P.C. Clayton, MO, for petitioner.
*Julia Collison, Esq.*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On October 18, 2018 ("Mr. Vianello," or "petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program.[2] Petitioner alleged he developed Guillain-Barre Syndrome ("GBS") as a result of receiving an influenza vaccination on October 23, 2015. Petition ("Pet."), ECF No. 1. On February 10, 2020, the undersigned issued an Order concluding the proceedings in this matter. ECF No. 28. A finding regarding entitlement was not made.

### I. Background

[1] This Decision has been formally designated "to be published," which means it will be posted on the Court of Federal Claims's website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). **This means the Decision will be available to anyone with access to the internet.** However, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id*.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## A. Summary of Relevant Medical Records

Petitioner received influenza ("flu") and pneumococcal conjugate vaccinations on October 23, 2015 during an appointment with his primary care provider. Pet. Ex. 16 at 77. On that date, petitioner presented for pain in his upper back and shoulders ongoing for three months. *Id*. A cervical spine x-ray was performed and showed anterolisthesis with advanced degenerative spondylosis at C5-C6. Pet. Ex. 3 at 37. Petitioner's primary care provider prescribed prednisone, a muscle relaxer, and physical therapy. Pet. Ex. 16 at 78. Petitioner was 78 years old and had a history of hypertension, hyperglycemia, hyperlipidemia, coronary artery disease and surgery, carotid artery disease and surgery, heart attack, gastroesophageal reflux disease ("GERD"), peptic ulcer, chronic anemia, cervical and lumbar degenerative disc disease, and arthritis in his hands and knees. *Id*. at 77-78.

In the next four weeks of November 2015, petitioner attended four weeks of physical therapy as prescribed for pain and reduced range of motion in his neck and referred pain down his left arm with numbness in his left hand. *See* Pet. Ex. 6 at 5-11.

In December of 2015, petitioner drove from Illinois to Texas, where he spent winters. *See* Pet. Ex. 12 at 155; Pet. Ex. 9 at 15.

On January 18, 2016, petitioner presented to the emergency room at Rio Grande Regional Hospital and provided a history of 10 days of cough, congestion, and weakness with five to six days of poor appetite. Pet. Ex. 5 at 39. He reported right leg weakness beginning two or three months ago. *Id*. He was diagnosed with generalized muscle weakness, bronchopneumonia, and dehydration; he was prescribed antibiotics for acute bronchitis. *Id*. at 43-44. Admission was recommended, but he refused and left against medical advice. *Id*. at 44.

On January 22, 2016, petitioner presented to the emergency room at McAllen Medical Center with weakness, difficulty walking, and difficulty closing his fingers. Pet. Ex. 12 at 202. He reported that he had a cold two weeks before which improved with a Z-pack but one week ago he started feeling sick again; he further reported five days ago, he noticed focalized weakness that was progressively worse on the right side. *Id*. at 285. He also complained of fever, chills, chest pressure, cough, and shortness of breath. *Id*. He was admitted and hospitalized for two weeks. He tested positive for the influenza A virus and was administered Tamiflu. *Id*. at 284. Laboratory tests showed that he had elevated cerebrospinal fluid ("CSF") protein but a normal white count. *Id*. at 144. A neurologist, Dr. Rossi, noted that the elevated CSF protein suggested possible GBS, but because petitioner retained reflexes, a myelopathic issue should also be considered. *Id*. at 145. He did not have significant sensory loss. *Id*. Viral myelitis was also considered. *Id*. An MRI could not be performed due to metal in petitioner's eye. *Id*. at 402. CT scan showed cervical spine stenosis compatible with cervical myelopathy; a neurosurgeon recommended surgical decompression. *Id*. at 338.

A neurology progress note authored by Dr. Moore on January 31, 2016, documented disagreement with a diagnosis of GBS because petitioner's deep tendon reflexes were preserved; he opined petitioner likely had cervical myelopathy. Pet. Ex. 12 at 402-03. Another neurologist, Dr. Hussain, suggested petitioner's symptoms were due to cervical stenosis. *Id*. at 359, 383.

Petitioner was discharged from McAllen Medical Center on February 8, 2016. His discharge diagnoses included hyponatremia, asymmetrical polyradiculoneuritis in the setting of viral disease, which was suspicious for GBS, and community-acquired pneumonia due to influenza A. Pet. Ex. 12 at 155-56.

Petitioner underwent three weeks at an inpatient rehabilitation center followed by 10 visits to an outpatient rehabilitation center. *See generally* Pet. Ex. 13-14.

On April 5, 2016, petitioner presented to his primary care provider for follow-up. Pet. Ex. 16 at 72. He reported he developed foot drop and weakness in his right leg in late December, flu like symptoms in late January 2016, and was diagnosed with bronchial pneumonia. *Id*. His weakness progressively worsened, so he went to the ER and was diagnosed with GBS. *Id*. Petitioner was referred to a neurologist. *Id*.

On April 30, 2016, petitioner presented to the emergency room at Good Samaritan Mt. Vernon complaining of bilateral lower extremity weakness. Pet. Ex. 4 at 32. He reported "newly diagnosed GBS" on January 22, 2016 after experiencing severe bilateral lower extremity weakness and shortness of breath. He reported receiving one "dose" of IVIG. *Id*. He had been going to rehabilitation therapy on an outpatient basis "since March" with no new episodes "until yesterday." *Id*. He fell "today" due to recurrent weakness. *Id*. Petitioner was admitted for observation. *Id*. He was assessed by a neurologist. The impression was acute demyelinating peripheral neuropathy, GBS, hypertension, hypertensive heart disease, coronary artery disease, status post-coronary artery bypass surgery, and GERD. *Id*. at 45-47. The neurologist did not think that IVIG was needed but recommended physical and occupational therapy and a speech evaluation. *Id*. at 47.

On May 6, 2016, petitioner was discharged from Good Samaritan. His discharge summary documented diagnoses of melena and anemia, requiring one blood transfusion, as well as a duodenal ulcer, which was biopsied and treated with a Protonix infusion. Pet. Ex. 4 at 26. His discharge diagnoses also included GBS, dyslipidemia, increased weakness when ambulating, bilateral leg weakness, and gait disturbance. *Id*. At discharge, he was noted to be walking with help and "in good condition." *Id*.

On June 29, 2016, petitioner presented to Dr. Silverman, a neurologist, following a referral by his primary care physician. Pet. Ex. 7 at 7. Petitioner reported in February 2016, "he presented with a 5 day history of worsening gait, ascending paresthesias, lower extremity weakness, right greater than left…He was diagnosed with Guillain Barre syndrome with SIADH, though some physicians questioned the diagnosis of GBS." *Id*. "He was doing well until about 1 month ago and then he developed a bleeding ulcer." *Id*. Following an exam, Dr. Silverman noted petitioner's symptoms were "localize[d] to the cervical spinal cord" and the "findings are incompatible with Guillain-Barre syndrome." *Id*. at 8. Rather, the findings were "more compatible with cervical myelopathy, possibly transverse myelitis." *Id*. A cervical MRI was performed which showed spinal cord compression at C4-5, with severe spinal canal stenosis and severe bilateral foraminal narrowing at C5-6. *Id*. at 8, 10-12. "The syndrome and radiographic findings are most consistent with cervical myelopathy due to external compression from spinal stenosis." *Id*. at 8.

On July 25, 2016, petitioner underwent cervical laminectomies at C4, C5, and C6 for decompression of the spinal canal. Pet. Ex. 8 at 71. Surgical findings included "significant degeneration of the cervical spine with spondylosis and spinal cord compression consistent with myelopathy and stenosis." *Id*. at 72. He was discharged to inpatient rehabilitation on July 29, 2016. *Id*. at 74-75.

On September 6, 2016, petitioner presented to Dr. Silverman for a follow-up. Pet. Ex. 7 at 4. Petitioner complained of progressive weakness that had worsened since his spinal surgery. *Id*. Dr. Silverman noted that a postoperative cervical MRI showed good decompression in the spinal cord with no new evidence of compression. *Id*. Upon examination, petitioner had spastic quadriparesis, greater in the legs than the arms; his symptoms were localized to the cervical spinal cord. *Id*. at 5. Dr. Silverman again noted that "[t]he exam findings are incompatible with [GBS]." *Id*. Petitioner was diagnosed with cervical myelopathy. *Id*.

An EMG performed on October 19, 2016 showed no evidence of a demyelinating neuropathy but did show chronic left C5-7 multilevel radiculopathy. Pet. Ex. 7 at 18; Pet. Ex. 8 at 1.

Petitioner returned to Dr. Silverman for a follow-up on December 29, 2016. Pet. Ex. 7 at 1. Examination revealed increased tone in the lower extremities but a "spastic and unsteady" gait. *Id*. at 2. Dr. Silverman noted petitioner's recent EMG showing no evidence a demyelinating neuropathy. *Id*. He further noted that the examination findings were not compatible with peripheral neuropathy but were compatible with cervical myelopathy. *Id*. Dr. Silverman recommended additional physical therapy. *Id*.

On August 10, 2017, petitioner sought a second opinion from Dr. Nemani, a neurologist. Pet. Ex. 9 at 12. Dr. Nemani's impression was that petitioner had GBS as well as cervical myelopathy. *Id*. at 15. He suggested an EMG, an MRI, and thorough bloodwork. *Id*.

Petitioner returned to Dr. Nemani on October 9, 2017. Pet. Ex. 9 at 6. Dr. Nemani documented his review of the spinal CT and the EMG with petitioner and recommended that petitioner see a hand surgeon for ulnar neuropathy. In Dr. Nemani's opinion petitioner "would not respond to IVIG therapy given the type of neuropathy he has." *Id*. at 10.

## B. Procedural History

The petition was filed on October 18, 2018, along with 11 exhibits including medical records and an affidavit from petitioner. *See* Petition, ECF No. 1; Petitioner's Exhibits ("Pet. Ex.") 1-11, ECF No. 2. This claim was assigned to the Special Processing Unit ("SPU"). ECF Nos. 5-6. Petitioner filed additional medical records and a Statement of Completion on January 2, 2019. Pet. Ex. 12-15, ECF No. 10; Statement of Completion, ECF No. 12.

In his affidavit, petitioner affirmed, "By mid to late November, 2015, I began to lose strength and feeling in my feet. By January 22, 2016, I was unable to walk, and by January 23, 2016, I was unable to lift my arms more than six inches." Pet. Ex. 11 at 1.

Respondent filed a status report on May 2, 2019, requesting petitioner file additional medical records. ECF No. 14. These records were filed on June 26, 2019. Pet. Ex. 16-18, ECF No. 18. Respondent filed a status report on August 27, 2019, requesting a deadline for his Rule 4(c) Report. ECF No. 20.

Respondent filed his Rule 4(c) Report ("Resp. Rpt.") on October 7, 2019, stating this matter was not appropriate for compensation. ECF No. 21. Respondent pointed out petitioner does not have a definitive diagnosis of GBS; multiple physicians attributed petitioner's symptoms to cervical myelopathy. *Id*. at 12; *see also* Pet Ex. 12 at 338, 383, 403; Pet. Ex. 7 at 2, 8; Pet. Ex. 8 at 21; Pet. Ex. 9 at 10. Furthermore, respondent submitted even if petitioner can provide preponderant evidence that GBS is the correct diagnosis, the onset of his symptoms was nearly three months after his flu vaccination, too far out in time to be connected. *Id*. at 13. Respondent cited to medical records showing petitioner consistently reported an onset of symptoms beginning in early 2016 to medical providers. *Id*.; *see also* Pet. Ex. 12 at 144; Pet. Ex. 7 at 7; Pet. Ex. 8 at 20. Respondent added petitioner's statement in his affidavit that his symptoms began in mid-to-late November is not supported by the medical records. *Id*. Respondent pointed to four weeks of physical therapy petitioner attended in November, with no mention of weakness or numbness in his legs at any of those appointments. *Id*. Respondent further noted petitioner drove sixteen hours from Illinois to Texas in mid-December 2015 without complaint, which would not support an onset of symptoms in November. *Id*. Additionally, respondent noted an onset of symptoms in late January would be consistent with GBS following a viral process. *Id*. Finally, respondent submitted that petitioner had not offered an expert report in support of his claim. *Id*. at 13-14.

This matter was reassigned to me on October 11, 2019. ECF Nos. 22-23.

During a status conference on December 4, 2019, the medical records were discussed. *See* Scheduling Order at 1-3, ECF No. 24. Also discussed was petitioner's affidavit, prepared in 2018, which stated for the first time that petitioner had symptoms in mid-to-late November 2015. *Id*. at 3, citing Pet. Ex. 11. This was inconsistent with the history he provided to the emergency room physician upon presentation on January 22, 2016 and these facts were not corroborated by, or consistent with any of the medical records created at the time of his presentation to treating physicians and would carry less weight than contemporaneously prepared medical records. *Id*. I noted that medical literature does not support an onset of GBS more than 42 days after receipt of a flu vaccine. *Id*. at 4. Even if petitioner's history of developing a foot drop at the end of December were accepted, the onset would still be over 60 days following his flu vaccine. *Id*. Moreover, when petitioner presented to the emergency room on January 22, 2016, he tested positive for influenza A and was diagnosed with community-acquired pneumonia; he also had diarrhea. *Id*. Flu, upper respiratory infections, and gastrointestinal illnesses can all cause GBS. *Id*. Petitioner's counsel advised he was contacted on the eve of the statute of limitations and had no alternative but to file the petition without the benefit of any medical records. *Id*.

On February 7, 2020, petitioner filed a status report advising he would be dismissing his Petition under Vaccine Rule 21. ECF No. 26. Later that day, petitioner filed a Motion to Voluntarily Dismiss the Petition pursuant to Rule 21(a). ECF No. 27. An Order concluding proceedings was issued on February 10, 2020. ECF No. 28.

That same day, February 10, 2020, petitioner filed a Motion for Attorneys' Fees and Costs. Motion for Fees, ECF No. 29. Petitioner requests attorneys' fees in the amount of $12,510.00 and attorneys' costs in the amount of $916.10 for a total amount of $13,426.10. *Id.* at 4-6. In accordance with General Order #9, petitioner's counsel represents that petitioner did not incur any out-of-pocket expenses. *Id*. at 5.

On February 14, 2020, respondent filed a response to petitioner's Motion for Fees. Response, ECF No. 31. Respondent submitted that petitioner's medical records "provide no objective basis for his alleged vaccine-related injury and cannot establish that his claim has a reasonable basis…." Response at 1. Petitioner filed a Reply later that day. ECF No. 32.

This matter is now ripe for consideration.

## II. Applicable Law and Analysis

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, he or she is entitled to an award of reasonable attorneys' fees and costs. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed. § 15(e)(1).

In the Vaccine Program, a petitioner is "entitled to a presumption of good faith as is the government." *Grice v. Sec'y of Health & Human Servs*., 36 Fed. Cl. 114, 121 (1996). A special master is justified in presuming good faith "in the absence of direct evidence of bad faith." *Id*. Because petitioners are afforded a presumption of good faith and respondent did not question the good faith of the petitioner in this matter, good faith requires no further analysis.

Reasonable basis is an objective standard determined by evaluating the sufficiency of the medical records in petitioner's possession at the time the claim is filed. "Special masters have historically been quite generous in finding reasonable basis for petitions." *Turpin v. Sec'y of Health & Human Servs*., No. 99-564, 2005 WL 1026714 at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005). However, the Federal Circuit recently denied an award of attorney's fees based on petitioner's lack of reasonable basis in *Simmons v. Secretary of Health and Human Services.* 875 F.3d 632, 636 (Fed. Cir. 2017). In *Simmons*, the Federal Circuit determined that petitioner lacked reasonable basis for filing a claim when, at the time of filing: (1) petitioner's counsel failed to file proof of vaccination, (2) there was no evidence of a diagnosis or persistent injury allegedly related to a vaccine in petitioner's medical records, and (3) the petitioner had disappeared for approximately two years prior to the filing of the petition and only resurfaced shortly before the statute of limitations deadline on his claim expired. *See id.* at 634-35. The Federal Circuit specifically stated that the reasonable basis inquiry is objective and unrelated to counsel's conduct prior to filing a claim. The Court consequently affirmed the lower court's holding that petitioner's counsel lacked reasonable basis in filing this claim based on the insufficiency of petitioner's medical records and proof of vaccination at the time the petition was filed. *Id.* at 636.

In light of *Simmons*, the Court of Federal Claims determined, "[I]n deciding reasonable basis[,] the Special Master needs to focus on the requirements for the petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery. . . Under the objective standard articulated in *Simmons*, the Special Master should have limited her review to the claim alleged in the petition to determine if it was feasible based on the materials submitted." *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121 at *7 (Fed. Cl. 2018). When evaluating a case's reasonable basis, petitioner's "burden [in demonstrating reasonable basis] has been satisfied . . . where a petitioner has submitted a sworn statement, medical records, and [a] VAERS report which show that recovery is feasible." *Id.* Moreover, the special master may consider various objective factors including "the factual basis of the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018).

Petitioner argued the petition maintained reasonable basis throughout its pendency. Petitioner submitted that "many special masters and U.S. Court of Federal Claims judges employ a totality of the circumstances test." Motion at 3 (internal citations omitted). To satisfy the reasonable basis requirement, petitioner pointed to the aforementioned diagnoses of GBS and cited to the record from his presentation to Rio Grand Regional Hospital on January 18, 2016, where he reported right lower extremity weakness for two to three months. *Id*. at 4, citing Pet. Ex. 5 at 39. Petitioner submitted that this history is consistent with a Table onset of GBS following flu vaccine and therefore establishes a reasonable basis for the claim. *Id*.

Respondent argued that petitioner's claim did not have a reasonable basis "either at the time it was filed, or after receiving petitioner's medical records." Response at 5. Respondent noted that, although petitioner's counsel advised that he was contacted on the eve of the statute of limitations and had to file the petition without the benefit of any medical records, *Simmons* determined that reasonable basis cannot be established by an impending statute of limitations. *Id*. at 4, citing Scheduling Order at 4, ECF No. 24.

Respondent rejected petitioner's use of the "totality of the circumstances" standard, submitting that *Simmons* rejected the "totality of the circumstances" test in favor of "an "objective inquiry" that relates to the "factual basis" or "merits of petitioner's claim."" Response at 3, quoting *Simmons*, 875 F.3d at 633-636. Respondent submitted that petitioner relied on one hospital record to support reasonable basis, which "is belied by the copious evidence *inconsistent* with the petitioner's affidavit and the GBS onset dates, which a reasonable pre-filing review of said medical records should have uncovered." Response at 4-5 (emphasis in original). Respondent cited to his Rule 4(c) Report for several examples from the medical records where petitioner reported an onset of symptoms in early 2016 rather than closer in time to his flu vaccination; respondent further noted that petitioner "attended four weeks of physical therapy in November 2015, and at no point mentioned lower extremity symptoms." Further, petitioner reported "feeling well during his sixteen-hour drive from Illinois to Texas in mid-December, 2015." *Id*. at 5, citing Resp. Rpt. at 13. Respondent submits not only did the record evidence "not satisfy the requirements of a Table claim," but "petitioner had significant causation hurdles to overcome…which he ultimately chose not to do." *Id*.

In his Reply, petitioner argued that respondent has conflated the reasonable basis standard with the standard for entitlement. Reply at 1. Petitioner submitted that, if "a special master can find that contemporaneous medical records are outweighed by later testimony that is 'consistent, clear, cogent, and compelling'" then "it is certainly reasonable for an attorney to believe his client's statement as a basis for filing a lawsuit when there are medical records that support his statement." *Id*. at 2, quoting *Crowding v. Sec'y of Health & Human Servs.*, No. 16-876V, 2019 WL 1332797, at *37-38 (Fed. Cl. Spec. Mstr. Feb. 26, 2019) (internal citations omitted). Petitioner further submitted that respondent relied on a medical record (Pet. Ex. 12) that counsel did not receive until after the claim had been filed. Moreover, petitioner submitted, the record relied upon by respondent reflects a statement made by petitioner on January 22, 2016, whereas the record relied upon by petitioner reflects a statement made closer in time to the vaccination, on January 18, 2016. *Id*. "Relying on an earlier, more contemporaneous statement is not unreasonable." *Id*.

Petitioner distinguished the other records cited by respondent as less reliable because the statements were made in June and July of 2016. *Id*. at 3. With regard to petitioner's failure to report lower extremity weakness to his physical therapist in November 2015, petitioner stated that "[h]is physical therapy ended around the same time his onset occurred so it is not surprising that he failed to mention this issue to his physical therapist." *Id*. Petitioner further discounted his statement that he was feeling well during his drive from Illinois to Texas because the statement was made on August 15, 2017. *Id*. Petitioner concluded that, although the records "raise issues of fact that may have been important for determining entitlement" they should not "provide a basis to deny petitioner's motion for attorney fees when petitioner's sworn statement was consistent with the statement regarding onset in Exhibit 5 which was made earlier than the statements upon which respondent relies." *Id*. at 3-4.

Petitioner relies on his affidavit prepared in 2018 and one medical record on January 18, 2016 reporting right lower extremity weakness for two to three months, to establish reasonable basis for his claim. As an initial matter, a petitioner's own statements are not "objective" for purposes of evaluating reasonable basis. *Gumm v. Sec'y of Health & Human Servs.*, No. 19-0421V, 2020 WL 917040 at *4 (Fed. Cl. Spec. Mstr. Jan. 21, 2020); *Chuisano*, 116 Fed. Cl. at 291 (petitioner's affidavit detailing "subjective belief" of vaccine injury did not constitute objective evidence). Therefore, petitioner's affidavit carries little weight in determining whether there is objective evidence to support reasonable basis. Accordingly, petitioner's argument relies predominantly on one medical record to support a claim for a Table onset of GBS following flu vaccine. This is unpersuasive when compared to the many other records which provide onset of symptoms in early 2016, as well as a lack of definitive diagnosis of GBS. Just as significant, is the fact that petitioner overlooked an issue which was previously raised during a status conference – the presence of alternative causes. When he presented to the ER on January 18, 2016, he provided a 10-day history of cough, congestion, and weakness with five to six days of poor appetite. Pet. Ex. 5 at 39. He was diagnosed with generalized muscle weakness, bronchopneumonia, and dehydration; he was prescribed antibiotics for acute bronchitis. *Id*. at 43-44. Four days later, on January 22, 2016, he presented to the emergency room at McAllen Medical Center with weakness, difficulty walking, and difficulty closing his fingers. Pet. Ex. 12 at 202. He reported he had a cold two weeks before which improved with a Z-pack but one week ago he started feeling sick again; he further reported five days ago, he noticed focalized weakness that was progressively worse on the right side. *Id*. at 285. He was hospitalized for two weeks, tested positive for the influenza A

virus and was administered Tamiflu. *Id*. at 284. He was also diagnosed with community-based pneumonia. GBS can be caused by influenza virus and other upper respiratory infections. Moreover, the medical records indicate that petitioner's diagnosis of GBS was questioned by several of his treaters; his neurologist, Dr. Silverman, attributed his symptoms to cervical myelopathy. Indeed, petitioner has severe spinal issues as reflected by multiple scans and eventual surgery, which could have caused his lower extremity weakness.

Petitioner submits that reasonable basis should be evaluated using the "totality of the circumstances" standard, rather than a pure "objective evidence" standard.[3] In a status conference held on December 4, 2019, when discussing issues raised by the medical records filed in this case, petitioner's counsel stated he was forced to file the petition due to an impending statute of limitations. *See generally*, Scheduling Order, ECF No. 24. In his Reply, counsel references records received after the petition was filed, inferring that he was forced to file the petition due to an impending statute of limitations when not in possession of the full record.

However, counsel's billing records indicate that this claim was not brought to him on the eve of the statute of limitations. Rather, petitioner first contacted counsel in April 2018, six months before the petition was filed. *See* Motion for Fees, Ex. A at 5. Medical records were requested in May 2018. *Id*. Counsel received petitioner's medical records from May through July 2018; during this time, he billed 3.7 hours reviewing the medical records. *Id*. at 4-5. Counsel then billed 6.2 hours on October 15, 2018 and 4.2 hours on October 16, 2018 for preparing the petition before filing the petition on October 18, 2018. *Id*. at 3-4. Accordingly, even if an impending statute of limitations was considered part of the reasonable basis inquiry, it would not be applicable here. Simply because counsel's in-depth review of the medical records in his possession occurred on October 15 and 16, 2018, while he was preparing the petition for filing on October 18, 2018, would not create a basis for arguing the petition was filed under pressure of a statute of limitations. Notably, petitioner filed his petition accompanied by medical records labeled Pet. Ex. 2-10. *Id*. at 4-5.

The medical records in counsel's possession at the time that the petition was filed included the records of petitioner's physical therapy in November 2015; petitioner's diagnosis of bronchitis on January 18, 2016; Dr. Silverman's records diagnosing cervical myelopathy, not GBS; EMG results showing no evidence of a demyelinating neuropathy; petitioner's spinal surgery; and petitioner's statement that he was able to drive sixteen hours from Illinois to Texas in December 2015. Upon review of the evidence, petitioner's claim did not have reasonable basis at the time it was filed and did not gain reasonable basis during its pendency.

Regardless of what test is used to review the evidence, a review of the medical records in counsel's possession at the time of the filing of the petition were sufficient to show there was no

---

[3] Respondent's argument that the totality of the circumstances test should be completely rejected in favor of an inquiry focused solely on objective evidence is currently being litigated before the Federal Circuit and therefore is not a question being addressed in this opinion. *See Cottingham v. Sec'y of Health & Human Servs.*, 134 Fed. Cl. 567 (2017), *appeal docketed*, No. 19-1596 (Fed. Cir. Feb. 26, 2019). However, *Simmons* did definitively resolve the issue of relying on the statute of limitations as a factor in assessing the reasonable factual basis for the claim. Therefore, it is immaterial what test is applied.

definitive diagnosis of GBS, the onset was outside the medically acceptable time frame of 3 to 42 days, and the statements of petitioner were not corroborated by the medical records.

## III. Conclusion

In accordance with the foregoing, petitioner's motion for attorneys' fees and costs is **DENIED**. The Clerk of the Court is directed to enter judgment in accordance with this Decision.[4]

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.